IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| MAEDA PACIFIC CORPORATION, a Guam corporation,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>GMP HAWAII, INC., a Hawaii corporation d.b.a. GMP Associates, *et al.*,<br><br>　　　　　Defendants. | CIVIL CASE NO. 08-00012<br><br><br><br><br><br><br><br><br><br><br>*as consolidated[1] with* |
| GMP HAWAII, INC., a Hawaii corporation d.b.a. GMP Associates, *et al.*,<br><br>　　　　　Plaintiffs,<br><br>vs.<br><br>LEXINGTON INSURANCE COMPANY, a Massachusetts corporation,<br><br>　　　　　Defendant. | CIVIL CASE NO. 11-00010<br><br><br><br><br><br><br>**ORDER** |

On July 12, 2011, the court heard oral argument on the motions filed by Lexington to stay the direct action claim filed in Civil Case No. 08-00012 and the proceedings in Civil Case No. 11-00010 pending arbitration. Appearing on behalf of movant Lexington was Thomas Sterling. Representing Maeda Pacific Corp. ("Maeda") was Samuel Teker. Joephet Alcantara

---

[1] At the hearing held on July 12, 2011, the court orally granted the motion filed by Lexington Insurance Company ("Lexington") to consolidate the two above-captioned actions. Accordingly, unless further ordered, Civil Case No. 08-00012 shall be the lead case, with all future pleadings in the consolidated actions to be filed therein.

Maeda Pacific Corp. v. GMP Hawaii, Inc. *et al.*, Civil Case No. 08-00012 as consolidated with
GMP Hawaii, Inc. *et al.* v. Lexington Insurance Company, Civil Case No. 11-00010
Order Granting Motions for Stay Pending Arbitration                          page 2 of 20

appeared on behalf of Jorgensen and Close Associates, Inc. and U.S. Specialty Insurance Co. (collectively "Jorgensen"). Representing GMP Hawaii, Inc. d.b.a. GMP Associates and Ohio Pacific Tech, Inc. d.b.a. GMP Associates, Inc. (collectively "GMP") were Ignacio Aguigui and Matthew Borden (via telephone). At the conclusion of the hearing, the court took the motions for stay under advisement. Having heard from the parties and based on relevant law and authority, the court hereby GRANTS the motions to stay.

## BACKGROUND

The Maeda Action (Civil Case No. 08-00012)

The case, filed on August 14, 2008, arises out of a contract for the design and construction of a water supply system at Andersen Air Force Base. A First Amended Complaint ("FAC") was filed on February 24, 2009. *See* Docket No. 54.[2] In a nutshell, Maeda was the prime contractor on the project, and the other parties to this action were various subcontractors and their insurers. The project included the construction of a reservoir water tank and appurtenant parts. Unfortunately, the reservoir tank roof collapsed, and thus Maeda brought suit against those it believed were responsible for the collapse.[3] The various cross claims, counterclaims, and third party claims were thereafter filed between the parties.

According to the FAC, in connection with its duties under the primary contract, Maeda subcontracted with GMP. *See* FAC, Docket No. 54, at ¶9. Maeda and GMP disagree over the exact scope of their contract.[4] Maeda contends that "GMP agreed to design the large water

---

[2] All docket references are to documents filed in Civil Case No. 08-00012 unless otherwise specified.

[3] The roof of the reservoir tank collapsed on July 12, 2007. *See* FAC (Docket No. 54) and Exh. B thereto at 3. There is controversy over the cause of the collapse. Maeda contends that the collapse was caused by the absence of vents, ventilating systems or ventilators in the tank. *See* FAC (Docket No. 54) at ¶¶20-21 and Ex. B thereto. However, GMP points out that a study commissioned by the Navy "suggests that operational errors could have been the cause for the collapse." Melnyk Decl. (Docket No. 98) at ¶18 and Ex. G thereto.

[4] The contract between Maeda and GMP is attached as Exhibit A to the FAC (Docket No. 54). This contract and related change orders appear to encompass design, quality control and value engineering services to be provided by GMP to Maeda. *Id.*

Maeda Pacific Corp. v. GMP Hawaii, Inc. *et al.*, Civil Case No. 08-00012 as consolidated with
GMP Hawaii, Inc. *et al.* v. Lexington Insurance Company, Civil Case No. 11-00010
Order Granting Motions for Stay Pending Arbitration       page 3 of 20

reservoir tank to be built pursuant to the prime contract, and agreed to utilize "its best professional skill and knowledge to prepare the Plans and Specifications and other information, and the ultimate design for said tank." FAC (Docket No. 54) at ¶14. GMP denied that it was responsible for the design of the reservoir tank, *see* GMP's Answer,[5] Docket No. 16 at ¶14, and instead asserted that "Maeda contracted with Smithbridge to design and construct the water reservoir tank." *See* GMP's Third Party Compl. (Docket No. 17) at ¶7.

Another of Maeda's sub-contracts was with Smithbridge. Maeda contends the subcontract with Smithbridge was for "construction of the reservoir tank and appurtenant sections." FAC (Docket No. 54) at ¶10. Maeda did not sue Smithbridge, but GMP filed a third party complaint against Smithbridge. *See* GMP's Third Party Compl. (Docket No. 17). Smithbridge admits that it contracted with Maeda "to design and construct a water reservoir tank structure," and to that end it "hired Jorgensen . . . to undertake the structural design of the water reservoir tank." *See* Smithbridge's Answer to Third Party Compl. (Docket No. 25) at ¶¶7 & 8.

The Maeda Action also included a direction action[6] claim by Maeda against Lexington

///
///
///

---

[5] GMP filed an Answer to the original Complaint. Pursuant to a stipulation between Maeda and GMP, because the FAC contained no new allegations against GMP, the parties agreed that GMP's Answer would constitute its answer to the FAC. *See* Docket No. 60 at 3.

[6] Guam's direction action statute provides:

> On any policy of liability insurance the injured person or his heirs or representatives shall have a right of direct action against the insurer within the terms and limits of the policy, whether or not the policy of insurance sued upon was written or delivered in Guam, and whether or not such policy contains a provision forbidding such direct action, provided that the cause of action arose in Guam. Such action may be brought against the insurer alone, or against both the insured and insurer.

22 GUAM CODE ANN. § 18305.

Maeda Pacific Corp. v. GMP Hawaii, Inc. *et al.*, Civil Case No. 08-00012 as consolidated with
GMP Hawaii, Inc. *et al.* v. Lexington Insurance Company, Civil Case No. 11-00010
Order Granting Motions for Stay Pending Arbitration                                    page 4 of 20

and U.S. Specialty Insurance Company.[7] Lexington admitted that it issued a policy of insurance to GMP which "afford[ed] coverage consistent with its terms which speak for themselves." *See* Lexington's Answer to FAC (Docket No. 67) at ¶4.[8]

In response to a motion for summary judgment filed by Jorgensen, on April 1, 2010, the Chief Judge certified certain questions to the Supreme Court of Guam, *see* Docket No. 181, and thereafter vacated the trial date and all associated pretrial conferences and deadlines pending answers to the certified questions.[9] *See* Order (Docket No. 203) at 13.

<u>The GMP-Lexington Relationship and Policy</u>

On November 26, 2007, GMP submitted a Renewal Application to Lexington for renewal of its 2006-2007 policy.[10] *See* Sterling Aff. (Docket No. 226), Ex. B[11] at ¶28. The Renewal Application contained the following two pertinent questions:

> 36. Has any claim ever been made against the firm or any persons named in Item No. 1 or Item No. 10?
>
> 37. After the inquiry, is the Applicant, any predecessors in business, or any other person for whom coverage is requested aware of any act, error, omission or circumstances which may possibly result in a claim being made against them? . . .

*Id.* at ¶29.

---

[7] U.S. Specialty admitted that it "issued a professional liability insurance policy to Defendant Jorgensen & Close Associates, Inc. . . ., which affords coverage consistent with its terms and limitations." *See* U.S. Specialty's Answer to FAC (Docket No. 62) at ¶6.

[8] A copy of the insurance policy, which is central to the resolution of the instant motions, can be found as Exhibit A to the Sterling Affidavit (Docket No. 227) and shall hereinafter be referred to as the "Policy."

[9] According to Maeda's May 2011 Status Report, the Supreme Court of Guam scheduled oral argument on the certified questions matter for June 28, 2011. *See* Docket No. 213.

[10] The 2006-2007 policy covered the period December 17, 2006 to December 17, 2007. *See* Sterling Aff. (Docket No. 226), Ex. B at ¶13. The 2006-2007 policy required GMP to report a claim to Lexington in writing during the policy period or within 60 days thereafter in order to avail itself of coverage under the 2006-2007 policy. *Id.*

[11] Exhibit B to the Sterling Affidavit (Docket No. 226) is Lexington's Arbitration Statement.

Maeda Pacific Corp. v. GMP Hawaii, Inc. *et al.*, Civil Case No. 08-00012 as consolidated with
GMP Hawaii, Inc. *et al.* v. Lexington Insurance Company, Civil Case No. 11-00010
Order Granting Motions for Stay Pending Arbitration                                                                          page 5 of 20

In response to question 36, GMP disclosed a claim unrelated to the Maeda Action. *Id.* at ¶30. With regard to question 37, GMP responded "no." *Id.* at ¶31.

Lexington thereafter issued the Policy to GMP, covering the period December 17, 2007, to December 17, 2008.[12] *Id.* at ¶6. The Policy provided coverage for the "Breach of Professional Duty forming the basis of any claim [that] arise[s] out of Professional Services that take place [during the] Policy Period." *See* Sterling Aff. (Docket No. 226), Ex. A at ¶ I.A.1. As a condition precedent to coverage, the Policy required that "[p]rior to the effective date of [the Policy], no officer, director, principal, partner, insurance manager, or risk manager of the Insured ha[ve] knowledge of the Breach of Professional Duty or circumstance likely to give rise to a Claim under [the Policy]." *Id.* at ¶ I.A.2. The policy defined the term "Claim" as "any written demand received by an Insured seeking Damages and alleging liability or responsibility on the part of the Insured or persons for whose conduct the Insured is legally liable." *Id.* at ¶ III.D. Additionally, the Policy defined the term "Damages" to mean "any amount which an Insured is legally obligated to pay for any claim to which this insurance applies." *Id.* at ¶ III.G.

Shortly after the Maeda Action was initiated (August 14, 2008), on or about August 27, 2008, GMP notified Lexington about the claims asserted against it in the Maeda Action. *See* Sterling Aff. (Docket No. 226), Ex. B at ¶18. On April 2, 2009, Lexington agreed to defend GMP in the Maeda Action subject to "a full and complete reservation of its right to deny coverage for the Maeda claim while it conducted an investigation into the coverage afforded under the Policy for the claims asserted against [GMP]." *Id.* at ¶19.

After the FAC adding Lexington as a defendant to the Maeda Action was filed on February 24, 2009, discussions ensued concerning the Calvo Firm's[13] representation of both

---

[12] The Policy is a "claims-made policy" which "applies to only those claims that are first made against the insured and reported to [Lexington] during the same policy period or extended reporting period, if applicable." *See* Sterling Aff. (Docket No. 226), Ex. A.

[13] Formerly the Calvo & Clark law firm and now doing business as Calvo Fisher & Jacob LLP. The Calvo Firm had been retained to represent GMP in the Maeda Action. *See* GMP's Answer, Docket No. 16.

Maeda Pacific Corp. v. GMP Hawaii, Inc. *et al.*, Civil Case No. 08-00012 as consolidated with
GMP Hawaii, Inc. *et al.* v. Lexington Insurance Company, Civil Case No. 11-00010
Order Granting Motions for Stay Pending Arbitration                                          page 6 of 20

GMP and Lexington in the Maeda Action. *See* Rosenberg Aff. (Docket No. 18 in Civil Case No. 11-00010) at ¶3. As a result of these discussion and because Lexington was still conducting its own investigation into the claims asserted by Maeda, GMP and Lexington executed a Conflict of Interest Waiver and Defense Agreement (hereinafter "Conflict Waiver Agreement"). *Id.* at ¶4 and Ex. A thereto. As a result of the execution of the Conflict Waiver Agreement, Lexington retained the Calvo Firm to defend it, along with GMP, in the Maeda Action. *Id.* at ¶5 and Ex. A thereto.

The Calvo Firm thereafter filed Lexington's Answer to the FAC on May 21, 2009. *See* Docket No. 67. Lexington's Answer denied "that it ha[d] any liability to Plaintiff or any other party," denied "each and every allegation [of paragraphs 20 through 22] that pertain[ed] to GMP or Lexington, [and denied] that [GMP] or Lexington [were] liable to Plaintiff in the amount alleged or in any amount . . . ." *Id.* at ¶18 and 20-22.

Lexington continued to conduct its investigation into the claims asserted in the Maeda Action and the coverage afforded to GMP under the Policy. *See* Sterling Aff. (Docket No. 226), Ex. B at ¶20. Some time in March or April 2010, the Calvo Firm provided the McCormack Firm with copies of deposition transcripts and exhibits pertaining to the Maeda Action. Rosenberg[14] Aff. (Docket No. 18 in Civil Case No. 11-00010) at ¶6. During its review of these documents, Lexington discovered a series of correspondence exchanged between Maeda and GMP in the Fall of 2007. *See* Sterling Aff. (Docket No. 226), Ex. B at ¶22. These correspondence consisted of: (1) a letter dated September 25, 2007 from Maeda's counsel (Larry Teker) to the Executive Vice President of GMP (Peter Melnyk);[15] (2) a letter dated October 26,

---

[14] Mr. Rosenberg is a partner in the McCormack Firm LLC and has served as coverage counsel for Lexington since 2008 with regard to the claims associated with the Maeda Action. *See* Rosenberg Aff. (Docket No. 18 in Civil Case No. 11-00010) at ¶2.

[15] This letter asserted that "GMP bears responsibility for all loss, costs and expense in connection with the roof collapse, which include but are not limited to all clean up costs and all costs associated with reconstruction of the roof, as well as any consequential damages sustained

(continued...)

Maeda Pacific Corp. v. GMP Hawaii, Inc. *et al.*, Civil Case No. 08-00012 as consolidated with
GMP Hawaii, Inc. *et al.* v. Lexington Insurance Company, Civil Case No. 11-00010
Order Granting Motions for Stay Pending Arbitration                                            page 7 of 20

2007 from GMP's counsel (Jannalyn C. Damian) in response to Mr. Teker's letter;[16] and (3) a letter dated November 16, 2007 from Mr. Teker to Mrs. Damian.[17] *See* Sterling Aff. (Docket No. 226), Ex. B at ¶¶24-26. Based on this series of letters, Lexington believed that GMP was not entitled to coverage under the Policy because GMP knew since September 2007 of the claims asserted against it by Maeda yet it failed to notify Lexington of said claims with 60 days as required by the 2006-2007 policy, and failed to disclose said facts on its Renewal Application, thus falling outside the purview of the 2007-2008 Policy. *See* Sterling Aff. (Docket No. 226), Ex. B at ¶¶20-21.

On October 6, 2010, Lexington then advised GMP that it would not indemnify GMP for any judgment or settlement ultimately rendered in the Maeda Action, but Lexington would continue to provide a defense to GMP under a reservation of rights and may seek reimbursement for such defense expenses at a later date. *Id.* at ¶27 and Compl. in Civil Case No. 11-00010 (Docket No. 1) at ¶22. Lexington also terminated its engagement with the Calvo Firm and retained separate counsel for itself.[18] *See* Rosenberg Aff. (Docket No. 18 in Civil Case No. 11-00010) at ¶7.

---

[15](...continued)
by Maeda," *See* Sterling Aff. (Docket No. 226), Ex. B at ¶24. Maeda's counsel also requested that GMP provide Maeda with "copies of its insurance certificates or bonds so that the insurers or bonding companies could be kept advised of the matter." *Id.*

[16] Mrs. Damian's letter stated "GMP is not liable for any loss, costs and or expenses arising from or connected with the AAFB water tank roof collapse. Further, GMP is not liable to [Maeda] for indemnification and is not obligated to defend [Maeda] or its surety from any claims relating to the water tank roof collapse." *See* Sterling Aff. (Docket No. 226), Ex. B at ¶25 and Larkin Decl. (Docket No. 234) at Exh. 1/Exh. E thereto.

[17] In this letter, Mr. Teker stated that "GMP Associates is the designer of record of this water tank, including the roof and GMP Associates is responsible for any deficiencies or defects in the drawings." *See* Sterling Aff. (Docket No. 226), Ex. B at ¶26 and Larkin Decl. (Docket No. 234) at Exh. 1/Exh. F thereto. The letter concluded by stated that "[s]ince GMP Associates has failed to recognize its responsibilities, liabilities and obligations in this matter, . . . Maeda . . . will proceed with the repair of the Andersen A.F.B. water tank . . . and, upon completion, Maeda . . . will turn over the full cost of the repair and additional design work . . . to GMP Associates . . . , and we fully expect your client to pay for same *in toto*." *Id.*

[18] On November 24, 2010, the law firm of Blair Sterling Johnson & Martinez made its entry of appearance on behalf of Lexington. *See* Docket No. 206.

Maeda Pacific Corp. v. GMP Hawaii, Inc. *et al.*, Civil Case No. 08-00012 as consolidated with
GMP Hawaii, Inc. *et al.* v. Lexington Insurance Company, Civil Case No. 11-00010
Order Granting Motions for Stay Pending Arbitration                                          page 8 of 20

On February 15, 2011, Lexington filed a Demand for Arbitration with the American Arbitration Association against Maeda and GMP. *See* Sterling Aff. (Docket No. 226), Ex. B. Lexington believed that pursuant to the terms of the Policy and the Conflict Waiver Agreement, Lexington and GMP agreed to seek resolution of the coverage dispute through arbitration. *Id.*

<u>The Lexington Action (Civil Case No. 11-00010)</u>

On April 12, 2011, GMP initiated the Lexington Action. In its complaint, GMP alleged claims of breach of contract and breach of the covenant of good faith and fair dealing against Lexington. Aside from compensatory and punitive damages, GMP sought (1) a declaratory judgment that Lexington is required to provide defense and indemnity coverage to GMP in the Maeda Action; (2) a declaratory judgment that GMP is not required to arbitrate the issues Lexington submitted to arbitration; and (3) an order enjoining Lexington from pursuing the arbitration.

Representing GMP in the Lexington Action was attorney Matthew Borden (of Braunhagey LLP) and the Lujan Firm. The Lexington Action created a non-waivable conflict for the Calvo Firm. *See* Rosenberg Aff. (Docket No. 18 in Civil Case No. 11-00010), Ex. B (email from Calvo Firm) . Accordingly, the Calvo Firm withdrew from further representing GMP in the Maeda Action. *See* Docket Nos. 238 & 250.

On May 5, 2011, Lexington filed an answer in the Lexington Action. *See* Docket No. 2 (in Civil Case No. 11-00010).

On May 20, 2011, Lexington filed the two motions at issue here seeking a stay of proceedings in connection with Maeda's direct action claim against Lexington and a stay of the entire Lexington Action pending arbitration of the issue of whether coverage exists under the Policy for the claims asserted by Maeda. Said motions have been fully briefed by the parties.

**ANALYSIS**

1. <u>Whether the motion to stay direct action claim is ripe for review</u>

In its opposition, Maeda asserted that Lexington's motion is not ripe for the court to consider. *See* Docket No. 233 at 2. In light of the certification matter pending before the Supreme Court of Guam, Maeda claimed that the direct action claim was "effectively stayed"

Maeda Pacific Corp. v. GMP Hawaii, Inc. *et al.*, Civil Case No. 08-00012 as consolidated with
GMP Hawaii, Inc. *et al.* v. Lexington Insurance Company, Civil Case No. 11-00010
Order Granting Motions for Stay Pending Arbitration         page 9 of 20

since all pretrial and trial dates/deadlines have been vacated. *Id.* Thus, Maeda contended there was no need for the court to rule on said motion at this time.

Lexington did not believe its motion was premature. Lexington agreed with Maeda's contention that the Maeda Action is essentially "stayed" while the parties await the Supreme Court of Guam's determination. *See* Docket No. 259 at 5. However, Lexington surmised that the Supreme Court of Guam would likely answer the certified questions in the next few months. *Id.* If that occurred, Lexington asserted it would be forced to move forward on the direct action claim unless the court imposed a stay as requested to permit the parties to participate in arbitration as contemplated under the Policy. Rather than wait for the Supreme Court of Guam's answers to be issued, Lexington believed it would be more appropriate to seek a stay at this stage before further effort was placed toward responding to discovery on the direct action claim. *Id.* at 6.

The court concurs with Lexington's position. Although the trial date and pretrial deadlines have been vacated, it would be an inefficient use of time if the court held off for several months its ruling on the motions for stay until the Supreme Court of Guam issued its answers to the certified questions. Regardless of the Supreme Court of Guam's answers, the court believes it is important to get early resolution of the pending motions and the coverage issue before the parties engage in further discovery on the merits, especially if it is later determined that there is no coverage under the Policy. Accordingly, the court concludes that the motion for stay is ripe for consideration.

2. <u>Whether Policy's arbitration clause covers dispute at issue here</u>

Lexington seeks a stay of Maeda's direct action claim and the Lexington Action under the Policy's terms,[19] the terms of the Conflict Waiver Agreement,[20] and Section 3 of the Federal

---

[19] The Policy contains an arbitration provision which provides in pertinent part:

Notwithstanding the Service of Suit Condition above, in the event of a disagreement as to the interpretation of this policy, it is mutually agreed that such dispute shall be submitted to binding arbitration before a panel of three (3) arbitrators, consisting of two (2) party-nominated (non-impartial) arbitrators and a

(continued...)

Maeda Pacific Corp. v. GMP Hawaii, Inc. *et al.*, Civil Case No. 08-00012 as consolidated with
GMP Hawaii, Inc. *et al.* v. Lexington Insurance Company, Civil Case No. 11-00010
Order Granting Motions for Stay Pending Arbitration                                    page 10 of 20

Arbitration Act ("FAA"), 9 U.S.C. § 3.

The FAA governs disputes involving contracts which touch upon interstate commerce or maritime law. 9 U.S.C. §§ 1 *et seq*. Section 2 of the FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA also establishes procedures by which federal courts implement section 2's substantive rule. For instance, Section 3 provides that a court "shall on application of one of the parties stay the trial of the action" "upon any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3.

The court's role under the FAA is to determine "(1) whether a valid agreement to

---

[19](...continued)
third (impartial) arbitrator (hereinafter "umpire") as the sole and exclusive remedy.

*See* Sterling Aff. (Docket No. 226), Ex. A at ¶ V.Q.

[20] The Conflict Waiver Agreement contained the following pertinent provisions:

2.  The parties to this agreement further agree that by consenting to the waiver of any actual or potential conflict of interest, none of the parties are waiving any rights or defenses they may have in connection with the Lexington policy. Moreover, the parties to this agreement further agree, as to the Lexington policy, that:
    a.  All disputes concerning coverage under the Lexington policy will be arbitrated pursuant to the applicable arbitration provisions as set forth in the Lexington policy.
    b.  The parties agree not to file any coverage-related cross claims or otherwise initiate claims against each other of any kind in the Maeda action.
    c.  The parties further agree that, for purposes of any coverage-related arbitration, no party will be bound by any rulings, admissions, or statement that may be made in the Maeda action. Rather, all facts relating to coverage shall be determined by the arbitrators in connection with the arbitration.

*See* Rosenberg Aff. (Docket No. 18 in Civil Case No. 11-00010), Ex. A.

Maeda Pacific Corp. v. GMP Hawaii, Inc. *et al.*., Civil Case No. 08-00012 as consolidated with
GMP Hawaii, Inc. *et al.* v. Lexington Insurance Company, Civil Case No. 11-00010
Order Granting Motions for Stay Pending Arbitration
page 11 of 20

arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d. 1126, 1130 (9th Cir. 2000) (citation omitted). Here, the parties do not dispute that a valid agreement to a arbitrate existed. The Policy between Lexington and GMP had an arbitration provision, *see* Sterling Aff. (Docket No. 226), Ex. A at ¶ V.Q, and so did the Conflict Waiver Agreement. *See* Rosenberg Aff. (Docket No. 18 in Civil Case No. 11-00010), Ex. A at ¶2. Accordingly, the court must determine whether the parties' dispute falls within the scope of their arbitration agreement.

"Generally, when examining an arbitration contract, 'the FAA establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . .'" *Momot v. Mastro*, ___ F.3d ___, 2011 WL 2464781 *4 (9th Cir. June 22, 2011) (*quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 at 24–25 (1983)). In light of this strong federal policy, enforcement of an arbitration agreement "should not be denied unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Technologies, Inc. v. Commc'ns Workers*, 475 U.S. 643, 650 (1986); *see also United Food and Comm. Workers Union v. Geldin Meat Co.*, 13 F.3d 1365, 1368 (9th Cir.1993) ("Doubts should be resolved in favor of coverage.").

Despite Lexington's assertion that this dispute involves "interpretation of the Policy" as contemplated in ¶ V.Q, both Maeda and GMP argue that the Policy's "narrow" arbitration clause does not apply to the disputes at issue here concerning coverage and bad faith. *See* Maeda Opp'n (Docket No. 233) at 8 and GMP Opp'n (Docket No. 16 in Civil Case No. 11-00010) at 8. GMP asserts that since Lexington "elected to limit the scope of its arbitration clause to 'interpretation of [the P]olicy," Lexington can not now broaden this provision to encompass the coverage dispute at issue here. GMP Opp'n (Docket No. 16 in Civil Case No. 11-00010) at 9. According to GMP, the disagreement here does not involve the interpretation of any term of the Policy. "Rather, it concerns (1) the factual question of whether notice was given; (2) the legal effect of any supposed lack of notice, and (3) whether Lexington Insurance has engaged in bad faith." *Id.* at 10.

Maeda Pacific Corp. v. GMP Hawaii, Inc. *et al.*, Civil Case No. 08-00012 as consolidated with
GMP Hawaii, Inc. *et al.* v. Lexington Insurance Company, Civil Case No. 11-00010
Order Granting Motions for Stay Pending Arbitration                               page 12 of 20

In response to this argument, Lexington maintains that "the determination of a coverage dispute involves an interpretation of the policy to determine what coverage it provides." Lexington Reply (Docket No. 17 in Civil Case No. 11-00010) at 12. Although the scope of the Policy's arbitration provision is not as broad as the language contained in the American Arbitration Association's standard clause, the court is not convinced that the Policy's arbitration provision is as narrow as Maeda and GMP argue it is. Because it can not be said with certainty that ¶ V.Q of the Policy is not susceptible to an interpretation that encompasses the asserted coverage dispute here, the court agrees with Lexington. The disagreement between GMP and Lexington requires interpretation of the Policy, specifically whether GMP complied with the conditions precedent set forth in ¶ I.A. If GMP failed to do so, as Lexington contends, then there is no coverage provided to GMP under the terms of the Policy. The court's role is not to express an opinion on the merits of whether a claim was timely made.[21] However, the court can not conclude that resolving the issue of whether a claim was timely made is independent of any interpretation of the Policy. The Policy's provision concerning "knowledge [by GMP] of the [b]reach of [p]rofessional [d]uty or circumstance likely to give rise to a [c]laim" will have to be interpreted to determine whether the correspondence exchanged between counsel for Maeda and GMP in the Fall of 2007 constituted such knowledge. Additionally, determining when a "claim" was made may well involve interpretation of the Policy. GMP's claim of bad faith against Lexington is also an issue which is arbitrable under the Policy since, if Lexington is correct that the conditions precedent of ¶ I.A have not been satisfied, then Lexington could not have acted in bad faith in denying GMP coverage under the Policy. Thus, this dispute over coverage involves "a disagreement as to the interpretation of [the P]olicy," which is subject to arbitration under ¶ V.Q of the Policy. The court's conclusion is bolstered by the language of the Conflict Waiver Agreement. Said agreement specifically provides that "[a]ll disputes concerning coverage under the Lexington policy will be arbitrated pursuant to the applicable

---

[21] There would appear to be some unfairness to the strict timing requirements of a claims-made policy. At the hearing held on July 12, 2011, Mr. Sterling briefly discussed with the court the advantages and disadvantages between a claims-made policy and an occurrence policy.

Maeda Pacific Corp. v. GMP Hawaii, Inc. *et al.*., Civil Case No. 08-00012 as consolidated with
GMP Hawaii, Inc. *et al.* v. Lexington Insurance Company, Civil Case No. 11-00010
Order Granting Motions for Stay Pending Arbitration                                              page 13 of 20

1  arbitration provisions as set forth in the Lexington policy." *See* Rosenberg Aff. (Docket No. 18

2  in Civil Case No. 11-00010), Ex. A at ¶2a.

3        Another argument raised by Maeda and GMP is that the Service of Suit provision set

4  forth in ¶ V.P of the Policy is much broader than the arbitration clause set forth in ¶ V.Q.  The

5  Service of Suit provision[22] covers the failure to pay "any amount claimed to be due" under the

6  Policy, whereas the arbitration clause covers only interpretations of the Policy.  GMP asserts

7  that under the broader Service of Suit clause, Lexington agreed to submit itself to the

8  jurisdiction of a court of competent jurisdiction.  GMP contends the "narrow" arbitration clause

9  is in conflict with the Service of Suit clause and creates ambiguity.  According to GMP, because

10 it is unclear whether the instant dispute is required to be submitted to arbitration or can be

11 brought in this court, GMP requests the court construe the Policy against Lexington and find the

12 arbitration clause to be superseded by the Service of Suit provision.  *See* GMP Opp'n (Docket

13 No. 16 in Civil Case No. 11-00010) at 11-12.

14       In so arguing, GMP cited to the case of *Monticelli v. Homestead Ins. Co.*, 1997 WL

15 88379 (N.D. Cal. Feb. 14, 1997), to support its proposition that the Service of Suit provision

16 trumps the arbitration clause of the Policy.  As Lexington notes, the *Monticelli* case is easily

17 distinguishable from the facts of the instant dispute.  The *Monticelli* case concerned a policy for

18 patent infringement abatement insurance and what appeared to be two contradictory clauses: the

19 arbitration clause contained in the policy and the service of suit provision, which was later

20 added as an endorsement to the original contract.  *Id.* at *1.  The district court eventually found

21 that the subsequent service of suit provision superseded the earlier arbitration clause because it

22 came later in time.  *Id.*  Unlike the facts of this case, both the Service of Suit provision and the

23 arbitration clause are contained in a single Policy which was issued by Lexington to GMP at the

24 same time.

---

26     [22] The Policy's Service of Suit provision in pertinent part provides: "In the event of
27 failure of the Company to pay any amount claimed to be due hereunder, the Company, at the
request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within
28 the United States." *See* Sterling Aff. (Docket No. 226), Ex. A at ¶ V.P.

Maeda Pacific Corp. v. GMP Hawaii, Inc. *et al.*, Civil Case No. 08-00012 as consolidated with
GMP Hawaii, Inc. *et al.* v. Lexington Insurance Company, Civil Case No. 11-00010
Order Granting Motions for Stay Pending Arbitration                                        page 14 of 20

In its motion, Lexington cites to a number of cases that rejected the notion that a service of suit provision overrode a policy's arbitration clause. *See* Lexington's Motion (Docket No. 3 in Civil Case No. 11-00010) at 4-5. The court has reviewed these cited cases supporting Lexington's contention that instead of conflicting with one another, a service of suit clause can be interpreted to be harmonious with an arbitration clause, specifically because the service of suit provision permits policyholders to bring suit in a court of competent jurisdiction in order to enforce compliance with an arbitration award. *See also NS Holdings LLC, Inc. v. American Intern. Group Inc.*, 2010 WL 4718895 at *3 (C.D. Cal. Nov. 15, 2010) (relying on the decision in *Borghos v. Certain Underwriters at Lloyd's of London*,[23] 36 Cal.4th 495, 115 P.3d 68 (Cal. Ct. App. (2005), the district court read the service of suit provision in plaintiff's insurance policy in accordance with the presumption favoring arbitration and found no conflict between said provision and the arbitration provision in the policy).

The court is persuaded by these line of cases and adopts Lexington's argument on the matter. The court finds no conflict between ¶ V.P and ¶ V.Q. Just as the *NS Holdings* and *Borghos* courts found no conflict in similar provisions, there can be no conflict here since arbitration clause set forth in ¶ V.Q specifically includes the phrase "[n]otwithstanding the Service of Suit Condition" of ¶V.P. The court reads these provisions in harmony with one another in light of the strong federal policy favoring arbitration.

   3. <u>Whether Lexington waived its right to arbitrate</u>

Having found that the arbitration provision encompasses the dispute at issue here, the court will next address the argument raised by Maeda and GMP that Lexington waived its right to arbitration. *See* Maeda Opp'n (Docket No. 233) at 3-6 and GMP Opp'n (Docket No. 16 in Civil Case No. 11-00010) at 12-13.

The parties all agree that to demonstrate waiver of the right to arbitrate, a party must

---

[23] The *Borghos* court, after surveying case law from federal and state courts around the country standing for the general proposition that service of suit and arbitration provisions similar to those at issue in its case do not conflict, stated that "the service of suit clause should be interpreted, in view of the presumption favoring arbitration, as intended to facilitate enforcement of the arbitration clause." *Id.* at 502..

Maeda Pacific Corp. v. GMP Hawaii, Inc. *et al.*, Civil Case No. 08-00012 as consolidated with
GMP Hawaii, Inc. *et al.* v. Lexington Insurance Company, Civil Case No. 11-00010
Order Granting Motions for Stay Pending Arbitration                                                                 page 15 of 20

show: "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir.1986). However, the Ninth Circuit has also emphasized that "waiver of the right to arbitration is disfavored because it is a contractual right, and thus 'any party arguing waiver of arbitration bears a heavy burden of proof.'" *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 758 (9th Cir.1988).

Maeda and GMP assert that all three prongs of the waiver analysis have been satisfied here. With regard to the first factor, Maeda and GMP contend that, as the drafter of the Policy, Lexington was well aware of its right to compel arbitration, yet it never sought to enforce the arbitration clause. *See* Maeda Opp'n (Docket No. 233) at 4 and GMP Opp'n (Docket No. 16 in Civil Case No. 11-00010) at 12.

Second, Maeda and GMP claim that Lexington acted in a manner inconsistent with its supposed right to arbitration by litigating the Maeda Action for two years (including participation in document discovery, depositions, and dispositive motions practice) before filing an arbitration demand. *Id.*

As to the third factor, Maeda and GMP allege that they have been and will be further prejudiced if Lexington is allowed to arbitrate its dispute. Maeda states that it has invested years of time and hundreds of thousands of dollars in extensive document discovery, depositions and motion practice, so it would be prejudiced if it were forced to arbitrate its claims in Massachusetts or wait until GMP and Lexington have completed their arbitration. *See* Maeda Opp'n (Docket No. 233) at 5-6. GMP, too, contends that it will be "substantially prejudiced if it is forced into a duplicative arbitration proceeding in a remote jurisdiction far from where the evidence is located and the witnesses reside." GMP Opp'n (Docket No. 16 in Civil Case No. 11-00010) at 12. GMP further claims prejudice in that granting the request to stay would require GMP to self-finance its defense in the Maeda Action while simultaneously defending against the arbitration claims. *Id.*

Lexington counters these arguments by asserting that neither party has established a

Maeda Pacific Corp. v. GMP Hawaii, Inc. *et al.*, Civil Case No. 08-00012 as consolidated with
GMP Hawaii, Inc. *et al.* v. Lexington Insurance Company, Civil Case No. 11-00010
Order Granting Motions for Stay Pending Arbitration                                            page 16 of 20

single prong of the three-part test. Although it is indisputable that Lexington was aware of the arbitration provision in the policy, Lexington contends the critical issue is *when* Lexington knew there was a coverage issue which then triggered the right to demand arbitration. Contrary to Maeda's assertions, Lexington maintains that it first realized the potential dispute over coverage some time in March or April 2010 when it was provided with the exhibits to depositions that showed a series of communications between Maeda and GMP which occurred in the Fall 2007. Lexington contends that upon this discovery it did not sit on its rights or take actions inconsistent therewith, but rather acted diligently when in October 2010 – a mere six or seven months after discovery of the communications – it discharged the Calvo firm, retained new counsel, and advised GMP that it was declining coverage under the Policy. Four months thereafter, Lexington filed its demand for arbitration as required by the Policy. Finally, Lexington argues that neither Maeda nor GMP have established the crucial element of prejudice. Lexington asserts that all the time, effort and expense associated with pretrial discovery and litigation maneuvers is insufficient to constitute "prejudice" as required by Ninth Circuit case law. *See Fisher*, 791 F.2d at 697 (rejecting claim of prejudice based on extensive discovery undertaken by the parties in a securities case). As Lexington notes, whether it made an arbitration demand or not, all the parties would have had to undertake the discovery thus far conducted. Furthermore, neither Maeda nor GMP can show that a significant portion of the "extensive" discovery and litigation had anything to do with the coverage dispute and the demand for arbitration.

     As for GMP's assertion that it will suffer prejudice by having to arbitrate in Massachusetts, Lexington correctly notes that GMP was well aware of the arbitration site since the Policy specifically states that the "arbitration proceeding shall take place in or in the vicinity of Boston, Massachusetts." As to GMP's argument about duplicative proceedings, the Ninth Circuit has found that "the possibility that there will be some duplication from the parallel proceedings" is not prejudicial since the FAA requires courts to "compel arbitration even where the result would be the possibly inefficient maintenance of separate proceedings in different forums. *See Fisher*, 791 F.2d at 698.

Maeda Pacific Corp. v. GMP Hawaii, Inc. *et al.*, Civil Case No. 08-00012 as consolidated with
GMP Hawaii, Inc. *et al.* v. Lexington Insurance Company, Civil Case No. 11-00010
Order Granting Motions for Stay Pending Arbitration                                    page 17 of 20

In light of the heavy burden placed on parties opposing arbitration and the strong policy favoring arbitration, the court overrules the Maeda and GMP's objections and adopts Lexington's arguments. The court finds that Maeda and GMP have failed to satisfy the three-prong test to establish that Lexington waived its right to arbitration.

### 4. Whether Maeda is bound by the arbitration agreement

Maeda's final argument is that because it is not a signatory to the Policy containing the arbitration clause, Lexington can not require Maeda to arbitrate its direct action claim. *See* Maeda Opp'n (Docket No. 233) at 6-8. Additionally, Maeda contends that because the arbitration provision only applies to disagreements as to the interpretation of the Policy itself, the arbitration provision would not apply to core issues such as the breach of contract and professional negligence claims it has asserted against GMP.

The case of *Arthur Anderson LLP v. Carlisle*, 129 S. Ct. 1896 (2009), is instructive with regard to Maeda's contention that it can not be compelled to arbitrate its claim since it was not a party to the Policy. In *Arthur Anderson*, a litigant who was not a party to the relevant arbitration agreement sought a stay of the proceedings in order to invoke Section 3 of the FAA and the relevant arbitration provision in the investment agreements. The Supreme Court eventually held "that a litigant who was not a party to the relevant arbitration agreement may invoke [Section 3 of the FAA] if the relevant state contract law allows him to enforce the agreement." *Id.* at 1903. The Supreme Court stated "that, where state law permit it, a third-party claim is 'referable to arbitration under an agreement in writing.'" *Id.* at 1902, n.6. Thus, the court must examine Guam law and determine whether Maeda, as a direct action claimant, can be required to participate in the arbitration proceeding envisioned by the Policy.

Lexington does not cite to any Guam cases on this issue but its motion and reply briefs make reference to several cases which hold that claimants who bring direct actions against insurers are considered third party beneficiaries to said insurance policies and are thus bound by an arbitration agreement in said policy. *See* Docket Nos. 225 at 6-7 and 259 at 9-11. Normally, a party cannot be compelled to arbitrate a dispute that it has not elected to submit to arbitration. Under California law, however, a nonsignatory can be compelled to arbitrate under two sets of

Maeda Pacific Corp. v. GMP Hawaii, Inc. *et al.*, Civil Case No. 08-00012 as consolidated with
GMP Hawaii, Inc. *et al.* v. Lexington Insurance Company, Civil Case No. 11-00010
Order Granting Motions for Stay Pending Arbitration page 18 of 20

circumstances: (1) where the nonsignatory is a third party beneficiary of the contract containing the arbitration agreement; and (2) where "a preexisting relationship existed between the nonsignatory and one of the parties to the arbitration agreement, making it equitable to compel the nonsignatory to also be bound to arbitrate his or her claim." *County of Contra Costa v. Kaiser Foundation Health Plan, Inc.,* 47 Cal. App.4th 237 at 242 (1996), 54 Cal. Rptr.2d 628; *see Matthau v. Superior Court,* 151 Cal. App.4th 593, 599–600 (2007). Lexington urges the court to hold likewise here and find that Maeda is a third party beneficiary to the Policy and thus must be bound by the arbitration provision.

The court notes that both Maeda and Lexington cite to the case of *Flexi-Van Leasing Inc. v. through Transp. Mut. Ins. Ass'n.*, 108 Fed. Appx. 35 (3d Cir. 2004) to support their respective positions on this matter. In *Flexi-Van*, the plaintiff obtained a default judgment against one of the world's largest container shipping lines, who had procured an insurance policy from a mutual indemnity insurance association. Said insurance policy contained a provision that stated "[i]f any difference or dispute shall arise between you (or any other person) and the Association arising out of or in connection with any insurance provided by the Association ..., it shall be referred to arbitration in London." *Id.* at 37. The plaintiff eventually brought suit against the insurance association under New Jersey's direct action statute. The trial court ordered the plaintiff to submit to arbitration, and in affirming that decision, the Third Circuit stated:

> Generally speaking, a party cannot be required to participate in arbitration, rather than adjudication, of a dispute unless it has agreed to submit that dispute, or disputes of like nature, to the arbitral process. Flexi-Van was not a signatory to the insurance policy, nor was it listed in the policy as an "Assured," a "Joint Assured," or a "Co-Assured." However, **we have recognized that non-signatories to an arbitration agreement may be bound by that agreement through the application of "traditional principles of contract and agency law." One such traditional principle, applicable in the arbitration context, is the principle that a third-party beneficiary is bound by the terms of a contract where its claim arises out of that contract.**

*Id.* at 40 (internal citations omitted; emphasis added).

Although there is no Guam case directly on point, in applying the above analysis, it would appear that Maeda is a third party beneficiary to the Policy. Under Guam law, Maeda is

Maeda Pacific Corp. v. GMP Hawaii, Inc. *et al.*, Civil Case No. 08-00012 as consolidated with
GMP Hawaii, Inc. *et al.* v. Lexington Insurance Company, Civil Case No. 11-00010
Order Granting Motions for Stay Pending Arbitration                                                                 page 19 of 20

entitled to bring a direct action against Lexington but such action must be "within the terms and limits of the policy." In this instance, the terms of the Policy require arbitration when there is disagreement as to the interpretation of the Policy. Because there is a disagreement as to whether GMP is entitled to coverage under the Policy, Maeda – as a third party beneficiary to the Policy – is equally bound by the arbitration provision of the Policy.

        5.        <u>Whether Lexington's "misconduct" precludes the granting of a stay</u>

Finally, GMP argued that Lexington's act of "engineering" the withdrawal of the Calvo Firm as counsel for GMP in the Maeda Action constitutes bad faith on its part. Although the Calvo Firm had represented GMP from the inception of the Maeda Action, GMP contended that Lexington refused to waive any potential conflict of interest the Calvo Firm faced "in an effort to undermine GMP's litigation strategy and to drive up its costs." *See* GMP Opp'n (Docket No. 16 in Civil Case No. 11-00010) at 13-14. Because of Lexington's improper and unfair litigation tactics, GMP asserted Lexington was precluded from obtaining the stay it sought.

Lexington denied the allegations of misconduct. *See* Lexington Reply (Docket No. 17 in Civil Case No. 11-00010) at 14-15. Lexington implied that it was GMP's misconduct in failing to timely notify Lexington of the likelihood of the Maeda claim and in failing to disclose this fact when Maeda renewed its insurance policy that resulted in Lexington's late discovery of the coverage issue. Lexington asserted that the Calvo Firm's conflict resulted not because of Lexington's actions but because GMP refused to honor its commitments to arbitrate coverage disputes as contemplated by the Policy and the conflict Waiver Agreement.

The court notes that GMP's opposition brief cites to no authority for the proposition that the court may refuse to enforce an arbitration provision based on misconduct on the part of the party asserting such a right. The court is not persuaded by GMP's arguments and finds no misconduct on the part of Lexington. Accordingly, the court overrules GMP's argument on this issue.

**CONCLUSION**

Based on the above analysis, the court rules as follows: (1) the motions are ripe for consideration; (2) the coverage dispute at issue here involves a disagreement as to the

Maeda Pacific Corp. v. GMP Hawaii, Inc. *et al.*, Civil Case No. 08-00012 as consolidated with
GMP Hawaii, Inc. *et al.* v. Lexington Insurance Company, Civil Case No. 11-00010
Order Granting Motions for Stay Pending Arbitration                                                                 page 20 of 20

interpretation of the Policy, thus falling within the scope of the Policy's arbitration provision; (3) Lexington has not waived its right to arbitrate; (4) Maeda, as a third party beneficiary to the Policy, is bound by the arbitration agreement; and (5) there was no misconduct on the part of Lexington concerning the Calvo Firm's eventual withdrawal so as to preclude the granting of a stay. In light of the strong federal policy favoring arbitration, the court hereby grants both of Lexington's motions for stay.[24] The direction action claim in Civil Case No. 08-00012 and GMP's claims in Civil Case No. 11-00010 are hereby stayed pending arbitration on the issue of whether coverage for such claims exist under the Policy.

In light of the imposed stay, the court hereby vacates the scheduling conference set for August 3, 2011. The requests[25] to participate telephonically are deemed moot.

Finally, Lexington shall file a report with the court on November 1, 2011, and every three (3) months thereafter, advising it of the status of the arbitration proceedings.

IT IS SO ORDERED.



/s/ Joaquin V.E. Manibusan, Jr.
U.S. Magistrate Judge
Dated: Aug 02, 2011

---

[24] These motions are Docket No. 225 in Civil Case No. 08-00012 and Docket No. 3 in Civil Case No. 11-00010.

[25] These requests are Docket Nos. 263 and 267.